**CONTINENTAL GRAIN COMPANY,**
Plaintiff-Appellant,

v.

**Wilbur FOLLOWELL,**
Defendant-Appellee.

No. 1–984A222.

Court of Appeals of Indiana,
First District.

March 12, 1985.

Rehearing Denied April 25, 1985.

K. Richard Hawley, Marc E. Hawley, Hawley, Hudson & Almon, Mount Vernon, Raymond W. Gray, Nashville, for plaintiff-appellant.

Thomas A. Zieg, Nashville, for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Continental Grain Company (Continental), appeals an adverse judgment rendered in the Brown Circuit Court in its suit for breach of a grain company's contract against defendant-appellee, Wilbur Followell.

We affirm.

### STATEMENT OF THE FACTS

Followell, a Brown County farmer who had not previously dealt in grain futures, initiated a telephone call to an employee of Continental on March 14, 1983, which resulted in an oral agreement whereby he agreed to sell Continental 3000 bushels of corn at $2.81 per bushel, and 2000 bushels of soy beans at $6.01 per bushel, to be delivered September, October and November, 1983, at Continental's elevator in Evansville, Indiana. Following the conversation, Continental mailed a separate written

document for each sale item, which was signed by Coleman Chuen and entitled "Purchaser Confirmation". Each stated on the front that Continental confirmed purchase of the grain as stated above, and the basis of the purchase was to be "delivered by truck to Continental Elevator, Evansville, Indiana, on S/O/N, 1983." The documents were identical form documents and contained the sentence, "Subject to the terms and conditions on back thereof". The back of the document, entitled "Purchase Contract Terms", contained 11 clauses, and as relevant here, stated:

"6. Buyer reserves right to change destination of shipments.

9. The terms expressed herein are the entire contract between the parties. No modification or amendment of the contract shall be valid or binding unless agreed to by both parties and confirmed in writing by either to the other.

10. It is understood that the retention of the confirmation without immediately notifying us by phone and confirming telegrams of error herein, is acknowledgement of contract as stated."

Within a few days, Followell called Chuen and told him he didn't agree with item 6. Upon hearing Chuen's reply that it didn't mean anything, Followell asked why it was in there. He told Chuen, "if I sign this, you can send me to Memphis, Tennessee or anywhere else you want me to go at my expense". Followell asked for an amendment, or a confirmation in writing of the Evansville destination only, and Chuen told him to return the document with his objection noted. A duplicate of the first document was sent back to Followell around April 7 or 8 without any change. Followell noted on the duplicate "I do not agree with item 6", and returned it to Continental. At approximately the same time, there were more phone conversations about item 6 during which Followell again requested a confirmation in writing or modification confirming only an Evansville destination. Continental did not comply with Followell's request until July 29, 1983, after a dramatic rise in the price of soy beans and grain, Continental sent a letter to Followell stating "we agree to your amendment and will guarantee Continental Evansville as destination of all shipments". The purchase confirmation was never signed by Followell.

In finding of facts and conclusions of law, the trial court essentially found that no contract was formed and there was no agreement, because the purchase confirmation contained terms and conditions not agreed upon, and therefore, the parties were not in agreement on all the essential terms of the contract and negotiations had terminated.

## ISSUES

I. Whether the judgment is contrary to law in that the trial court failed to enforce an oral agreement admitted to in court by the defendant.

II. Whether the judgment is contrary to law in that the trial court failed to enforce an oral agreement between merchants evidenced by a written confirmation not objected to in writing within ten (10) days.

III. Whether an additional term in a written confirmation makes the whole oral contract unenforceable.

IV. Whether the trial court's findings of fact numbers 12, 13, and 14 are erroneous.

## DISCUSSION AND DECISION

We are of the opinion that all of the issues are interwoven, and we will discuss them together. All Indiana Code references herein to the Uniform Commercial Code, IND.CODE 26–1–1–101, *et seq*, shall be made by the UCC designation.

Continental's argument proceeds in the following manner: even though the contract was oral, since Followell did not sign the Purchase Confirmation, the contract is enforceable and relief is not barred by the Statute of Frauds, 2–201, because (1) Followell admitted the existence of the March 14 oral contract at trial pursuant to 2–201(3)(b) and (2) after receiving the confir-

mation document, he made no objection to its content within 10 days as required by 2–201(2). Continental then argues that 2–207 controls the transaction. That section states:

"*Additional terms in acceptance of confirmation.*

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."

It argues that the additional term; that is, the right to change the point of destination, does not render the oral contract made on March 14 unenforceable. While conceding that the additional term was objected to and does not form a part of the contract, Continental claims the remainder of the contract is enforceable as to the Evansville destination.

Followell's argument follows the trial court's finding that no contract was ever entered into. The principal issue in this case is whether a contract ever came into

being. For the purpose of this opinion, we will assume that the statute of frauds forms no impediment to enforcement.

 2–204 of the UCC states that a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct of the parties. The Indiana comment to this section found in Burns IND.CODE states that to form a sales contract there must be a meeting of the minds, an assent by both parties growing out of their intentions and an agreement freely reached. The courts cannot supply provisions actually lacking or impose conditions not actually assumed. Under 2–202, final written expressions of agreement cannot be contradicted by evidence of prior agreement or a contemporaneous oral agreement but may only be explained or supplemented. An agreement is defined in 1–201(3) as a bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing, course of performance, or usage in the trade. The law of contracts supplements the provisions of the UCC 1–103.

 Clearly, the expressions contained in the various sections of a sales contract require a meeting of the minds on material points, the absence of which prevents the formation of a contract.

 Under the law of contracts, the intention of the parties is a factual matter to be determined by the trier from all of the circumstances, and a party relying on an express contract bears the burden of proving its existence. 6 I.L.E. *Contracts,* Sec. 21; *Dyer Construction Co. v. Ellas Co.,* (1972) 153 Ind.App. 304, 287 N.E.2d 262. Where there is probative evidence to support the conclusion that there was no meeting of the minds between the parties, we will not disturb that conclusion. *Dyer, supra.*

 We read 2–207(2) to mean that an acceptance containing additional or different terms forms a contract as to the original offer, but that the additional or different terms become proposals for additions

to the contract already made pursuant to the offer. Between merchants, the additional or different terms become a part of the contract unless excluded by (2)(a), (b), or (c), upon which exclusion the additional or different terms fall out and do not form a part of the contract. This interpretation conforms with J. White & R. Summers, *Uniform Commercial Code,* Chap. 1 (2d ed. 1980).

■ Section 2–207 abandons the mirror image rule that an acceptance must coincide exactly with all terms of an offer. *Uniroyal, Inc. v. Chambers Gasket and Manufacturing Co.,* (1978) 177 Ind.App. 508, 380 N.E.2d 571; White & Summers, *supra.* 2–207 permits enforcement despite discrepancies between offer and acceptance if enforcement could be required without either party being bound to a material term to which he has not agreed. *Uniroyal,* supra, 380 N.E.2d at 575.

■ The phrase after the comma in 2–207(1) "unless acceptance is expressly made conditional on assent to the additional or different terms" must be construed as imposing a limitation upon how much an acceptance can differ and still be considered an acceptance at all. White & Summers state:

"We think that in the usual purchase order-acknowledgment context the forms do not approach this limit at least if the forms do not diverge as to price, quality, quantity, or *delivery terms,* but only as to the usual unbargained terms on the reversed side concerning remedies, arbitration and the like." (Emphasis added.)

White & Summers, *supra,* at 27.

White & Summers also discuss the possibility which is the subject of this appeal, when a party insists on contracting on all his terms and prohibits any other terms:

"Assume that one party sends the other party a document which contains a conspicuous term stating that any contract formed as a result of an exchange of documents must consist of all the terms in that form and no others. Such a term

in an acceptance would cause the acceptance to be 'expressly conditional' and thus would bar the formation of a contract under the language of 2–207(1) after the comma.

\* \* \* \* \* \*

Where the restrictive language in the offer is construed to limit forms of acceptance to documents that neither add nor contradict, no contract exists at the conclusion of the exchange of forms since no 2–207(1) acceptance occurs."

*Id.* at 33–34.

■ As specifically stated, 2–207(1) applies to written confirmation of oral contracts. Therefore, where confirmation differs materially, no contract is formed. Not all return documents are 2–207(1) acceptances. Performance alters results, but performance is not involved here. Again, quoting from White & Summers:

"If the return document diverges significantly as to a dickered term, it cannot be a 2–207(1) acceptance. For example, if the purchase order calls for the sale of 200,000 pounds of lard at ten cents a pound and the acknowledgment responds with 200,000 pounds at fifteen cents a pound, the second document is not an acceptance under 2–207(1), and no contract is formed via the exchange of forms. If the parties thereafter fall into dispute before either performs, no one has liability for not performing. For example, the parties in *Koehring Co. v. Glowacki*[1] exchanged telegrams, one with the sale 'as is—where is,' the other 'F.O.B. our truck your plant loaded'. The parties never began performing and the court held that no contract was formed since the second form diverged 'radically'.

If, on the other hand, the parties perform and the question arises as to what the contract is, we would proceed directly to subsection (3). There, as we have seen, the parties will get the terms on which

---

**1.** *Koehring Co. v. Glowacki,* (1977) 77 Wisc.2d 497, 253 N.W.2d 64.

their documents agree plus those that the Code offers."

*Id.* at 37.

The above quote finds support in Indiana case law. In *Uniroyal, supra,* Chambers, a buyer, mailed its purchase order to Uniroyal, seller, specifying only the quantity of goods, the price therefor, and the date of shipment. Uniroyal responded with its purchase order, which stated:

"WE ACKNOWLEDGE AND THANK YOU FOR YOUR ORDER. OUR ACCEPTANCE OF THE ORDER IS CONDITIONAL ON THE BUYER'S ACCEPTANCE OF THE CONDITIONS OF SALE PRINTED ON THE REVERSE SIDE HEREOF. IF BUYER DOES NOT ACCEPT THESE CONDITIONS OF SALE, HE SHALL NOTIFY SELLER IN WRITING WITHIN SEVEN (7) DAYS AFTER RECEIPT OF THIS ACKNOWLEDGEMENT."

*Uniroyal, supra,* 380 N.E.2d at 577.

The terms involved severe restrictions on warranties, remedies, and notice. Goods were shipped and used, and the above order procedure was repeated, followed by additional shipments and delivery. The court discussed 2–207(1) in determining whether a contract was formed and on what terms.

"Uniroyal's 'acceptance' was expressly conditional on Chambers' assent to the terms contained in the 'Conditions of Sale'. A few cases exist which would seem to require the conclusion, in such circumstance, that Uniroyal's 'acceptance' was in fact a 'counter-offer' which Chambers accepted by taking delivery of goods and failing to object to the new terms. *Roto-Lith, Ltd. v. F.P. Bartlett & Co.,* (1st Cir.1962) 297 F2d 497. See also *Gilbert & Bennett Mfg. Co. v. Westinghouse Electric Corp.,* (D.Mass.1977) 445 F.Supp. 537; *Beech Aircraft Corp. v. Flexible Tubing Corp.,* (D.Conn.1967) 270 F.Supp. 548.

*Roto-Lith, supra,* involved a purported acceptance of an offer which disclaimed all warranties, express and implied. The court held that where an acceptance states a condition materially altering the obligations 'solely to the disadvantage of the offeror' it is, in effect, an acceptance expressly conditional on assent to the additional terms and therefore a counteroffer. Thus, when the offeror accepted the goods without objection, it became bound to the terms of the offeree's responsive document."

*Id.*

Judge Sullivan, in *Uniroyal,* while concurring that no contract would be formed on the offer as in *Roto-Lith,* disagreed with the *Roto-Lith* holding that acceptance of the goods formed a contract on the offeree's terms. He held that the purpose of 2–207 would not be well served by allowing the offeree's responsive documents to state additional and different terms which would thereafter be deemed accepted by the offeror's inaction. The burden of affirmative objection to the original offer is in itself a modification to which the offeror should have to assent. The court concluded:

"In the case before us, the writings exchanged between Chambers and Uniroyal did not create a contract. Uniroyal's acceptance was expressly conditioned on Chambers' assent to the new terms and the record reveals no manifestation of Chambers' assent to those terms. However, both parties performed what they apparently believed to be their contractual obligations, as evidenced by the shipping and acceptance of the goods. Therefore, their conduct is 'sufficient to establish a contract'. Sec. 2–207(3). *Cf.* Sec. 2–204, 2–206.

The terms of the contract are those on which the writings agree, as supplemented by applicable Code provisions. The writings between Chambers and Uniroyal agree only as to terms of price, quantity and time for shipment. All other terms contained in the writings are therefore inoperative and the Code must supply any additional terms.

We here identify only one relevant provision of the Code which supplements the

agreement: Sec. 2–314, which imposes an implied warranty of merchantability."

*Id.*, 380 N.E.2d at 578.

Here, the confirmation diverged so materially in item 6, which reserved Continental's right to change the place of destination, that if exercised by Continental, it could be ruinous to Followell. Item 6, accompanied by item 9, the insistence that Continental's terms and no others would be accepted, makes the acceptance expressly conditional, and thus no 2–207(1) acceptance occurred. Unaided by performance, as in *Uniroyal* or *Roto-Lith*, no contract was formed. The placing of the burden of affirmative objection on Followell is inoperative; in any event; affirmative objection was made by Followell, and Continental does not contend otherwise.

Continental's reluctance and delay from March 14 to July 29 to modify item 6 in writing belies their oral protestation that item 6 "didn't mean anything". Only after negotiations had ceased, as the trial court found, and grain and soy bean prices had dramatically risen four and one-half months later, did Continental opt to accede to Followell's request. The court was correct in holding that no contract ever existed.

We have answered all legal questions raised in Issue 4. The factual issues are without merit.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.