MARTIN RISPENS & SON and Petoseed
Company, Inc., Appellants,
(Defendants Below),

v.

HALL FARMS, INC., Appellee.
(Plaintiff Below).

No. 14S01–9309–CV–1021.

Supreme Court of Indiana.

Sept. 22, 1993.

Michael Rosiello, Stanley C. Fickle, Jan M. Carroll, Barnes & Thornburg, Indianapolis, for Petoseed Co., Inc. and Martin Rispens & Son, Inc.

Stephen L. Williams, Mann Chaney Johnson Goodwin & Williams, Terre Haute, Paul B. Ledford, Vincennes, for Hall Farms, Inc.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

We grant transfer to address whether defendants, Martin Rispens & Son, and Petoseed Company, Inc. (Appellants–Defendants below) are entitled to summary judgment on certain warranty, negligence and strict liability in tort claims filed by Hall Farms, Inc. (Appellee–Plaintiff Below). *Martin Rispens & Son v. Hall Farms, Inc.* (1992), Ind.App., 601 N.E.2d 429.

### *Facts*

The facts pertinent to Hall Farms' petition are as set forth in the opinion of the Court of Appeals:

Hall Farms, Inc., farms about 1,400 acres of mostly rented land in Knox County, Indiana. It produces grain, row crops, hay, watermelons, and cantaloups and raises a few hogs and cows. In 1989, Hall Farms employed between 116 and 170 people; that year's watermelon and cantaloup crop generated some $440,000 in gross revenues, despite the fruit blotch. Much of Hall Farms' past success in the melon market is attributable to the Prince Charles variety watermelon seed, known for its high yield and resistance to disease. Hall Farms had used the variety since 1982 or 1983.

In August of 1988, Hall Farms ordered 40 pounds of Prince Charles seeds from Rispens at a cost of $85.40 per pound.

As requested, Rispens delivered the seeds, packaged in sealed one pound cans, in February 1989. Hall Farms stored the unopened cans until early April, at which time the watermelon seeds were germinated in two greenhouses.

On April 25th Mark Hall noted that about 15 seedlings were spotted with small yellow lesions. Suspecting gummy stem blight, a seed borne disease, Hall contacted a neighbor who, in turn, contacted Dr. Richard Latin, a plant pathologist from Purdue University. After transporting samples to the Purdue laboratory, Dr. Latin concluded the problem was neither gummy stem blight nor any fungus.

The lesions did not affect the plants' growth, however, and no plants died. The asymptomatic seedlings were transplanted to the fields between May 8th and 10th. Mark Hall monitored the plants every three or four days for the next several weeks, as was his custom. Although some looked a little "funny," they were nevertheless "growing like mad." *Record* at 651. On July 5th or 6th, Hall spotted a watermelon blemished by a small purple blotch. By July 15th, the blotch was "spreading like wildfire." *Record* at 662. By harvest time ten days later, a significant portion of the watermelon crop had been ruined.

Hall Farms left most of the blotched Prince Charles watermelons in the fields. They were eventually plowed under in early September in preparation for the planting of oats and then soybeans. Volunteer plants appeared the next summer, but Mark Hall killed them with Blazer, a herbicide, before Dr. Latin could examine them. Hall Farms suffered no watermelon blotch in 1990, even in fields that were infected the year before. During its investigation, Hall Farms learned the Prince Charles variety seeds it planted came from Petoseed's Lot Nos. 1018 and 5024. Lot 1018 was grown in China; lot 5024 was grown in Mexico.

Based on his discussions with Dr. Latin, who was of the opinion the bacteria causing the fruit blotch were introduced into Indiana through the Prince Charles seeds, Hall reasoned the Chinese or Mexican fields must have had the fruit blotch because his plants had it. Petoseed, a part of Hall Farms' argument goes, was therefore culpable to the extent it knew or should have known the fields were infected and yet harvested the seeds of the infected watermelons for resale to businesses like his.

*Rispens*, 601 N.E.2d at 432–3 (footnote omitted).

Hall Farms sued Rispens (the seed retailer) and Petoseed (the seed grower) seeking a recovery on theories of strict liability in tort, negligence, and breach of express and implied warranties. After the trial court denied defendants' motions for summary judgment, defendants brought an interlocutory appeal. For Petoseed, the Court of Appeals ordered the trial court to enter summary judgment on the negligence and breach of warranty claims. The Court affirmed denial of summary judgment on the product liability claim because a question of fact existed about whether the damage was sudden and major. For Rispens, the Court of Appeals ordered the trial court to enter summary judgment on the strict liability, negligence, and all but one of the warranty counts. Summary judgment was denied with respect to one express warranty claim. Additionally, the Court held that Rispens and Petoseed had effectively limited their liability to the cost of the seed, whether the theory was contract or tort.

Plaintiff Hall Farms seeks reinstatement of the trial court's denial of summary judgment on all issues. We grant transfer in order to discuss and decide the interrelationship of the three product liability theories, *viz.* warranty, strict liability, and negligence.

## I. *Warranty Claims*

### A. *Express Warranties*

Hall Farms argues that the Court of Appeals erred (1) in deciding the non-existence of certain express warranties as a matter of law, and (2) in holding that certain language on the Petoseed can and the

Rispens order form did not create express warranties.

■ Where an agreement is entirely in writing, the question of whether express warranties were made is one for the court. *Woodruff v. Clark County Farm Bureau Coop. Ass'n.* (1972), 153 Ind.App. 31, 50, 286 N.E.2d 188, 199. Here, all the representations upon which Hall Farms relies were in writing. Therefore, the Court of Appeals correctly determined the existence of express warranties as a matter of law.

Hall Farms' warranty claims arise out of the sale of goods and, thus, those claims are governed by Article 2 of the Uniform Commercial Code ("UCC"), *Ind.Code Ann.* § 26–1–2–101 through § 26–1–2–725 (West 1980 & Supp.1992). The UCC provides for the creation of express warranties.[1] *Ind. Code* § 26–1–2–313.

■ An express warranty requires some representation, term or statement as to how the product is warranted. *Candlelight Homes, Inc. v. Zornes* (1981), Ind. App., 414 N.E.2d 980, 983. Stated another way, an express warranty may be created if the seller asserts a fact of which the buyer is ignorant, but not if the seller merely states an opinion on a matter on which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment. *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir.1980). Thus, a seller's factual statement that a machine had a new engine constituted an express warranty. *Perfection Cut, Inc. v. Olsen* (1984), Ind.App.,

470 N.E.2d 94, 95. Assurances by a seller that carpet would be replaced if any defects surfaced within one year of purchase was sufficient to create an express warranty. *Carpetland U.S.A. v. Payne* (1989), Ind.App., 536 N.E.2d 306, 308.

■ By contrast, statements of the seller's opinion, not made as a representation of fact, do not create an express warranty. *Thompson Farms, Inc. v. Corno Feed Products* (1977), 173 Ind.App. 682, 708, 366 N.E.2d 3, 18; *James J. White & Robert S. Summers*, 1 *Uniform Commercial Code* § 9–4, at 445 (3d ed. 1988) (hereafter "*White & Summers*"). The statement that a product "is the best" is simply puffing which does not create an express warranty. *Thompson Farms*, 173 Ind.App. at 708, 366 N.E.2d at 18.

*Petoseed.* The label on the Petoseed cans of Prince Charles watermelon seeds states that they are "top quality seeds with high vitality, vigor and germination." This printed label is the sole basis for Hall Farms' express warranty claims against Petoseed.

■ Hall Farms equates the phrase "top quality seeds" with the statement that the goods were "in good order, condition and repair," found to be an express warranty in *Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 90–91 (7th Cir.1985), and with the statement that a truck was "road ready," held to be an express warranty in *Wiseman v. Wolfe's Terre Haute Auto Auction, Inc.* (1984), Ind.App., 459 N.E.2d 736, 737. We do not

---

**1.** Section 2–313 provides:

(1) Express warranties by the seller are created as follows:

  (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

  (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

  *      *      *      *      *      *

(2) It is not necessary to the creation of an express warranty that the seller use formal

words such as "warrant" or "guarantee" or that he have a special intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create an express warranty. *Ind.Code* § 26–1–2–313.

agree. The phrase contains no definitive statement as to how the product is warranted or any assertion of fact concerning the product, but is merely the opinion of Petoseed that the seeds are "top quality." The Court of Appeals correctly concluded that the statement "top quality seeds" is a "classic example of puffery." 601 N.E.2d at 435.

■ Hall Farms also argues that the Court of Appeals erred in holding that, although the phrase "with high vitality, vigor and germination" constituted an express warranty, Petoseed did not breach this warranty because the growth of the seeds conformed to the affirmation on the label. 601 N.E.2d at 435. This phrase is a promise that the seeds will perform in a certain manner; it is not simply the opinion of the seller. However, we are not able to determine as a matter of law whether this express warranty was breached. On the one hand, Petoseed asserts that the promise made was only that the seeds would germinate and grow, which according to Mark Hall, they did. On the other hand, Hall Farms asserts that the presence of the disease inhibited the vitality and vigor with which the plants grew. We agree with Hall Farms that the issue of whether the seeds which carried the watermelon fruit blotch had the capacity for natural growth and survival is one for the finder of fact. Thus, summary judgment is not appropriate on this express warranty claim.

■ *Rispens.* Rispens' purchase order, the sole basis for Hall Farm's express warranty claim against Rispens, stated in pertinent part:

[T]he seller agrees to deliver such seeds in good merchantable condition as hereinafter defined and of good germination for the crop of the current year. The phrase "in good merchantable condition" is defined as seeds properly fitted for seeding purposes, by thorough screening, and where necessary by hand picking; approximately free from foreign seeds distinguishable by their appearance.

The parties agree that the language "properly fitted for seeding purposes," created an express warranty, but they assign different meanings to it. Rispens asserts that the warranty is merely that the can contains Prince Charles watermelon seeds and not some other type of seed. Hall Farms asserts that the warranty contains a quality component promising that the seeds would be free of a latent bacteria such as watermelon fruit blight. Although courts decide as a matter of law the existence of express warranties when the representations are in writing, if the writing is ambiguous, then its interpretation is one of fact. *First Fed. Sav. Bank v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 603–4. Questions of fact exist as to the meaning of the express warranty and, thus, the Court of Appeals correctly held that Rispens is not entitled to summary judgment on whether this express warranty was breached. 601 N.E.2d at 437.

■ Hall Farms also argues that the phrase, "strictly high grade seeds," which appeared at the top of the purchase order, created an express warranty. The Court of Appeals held that this language may have constituted an express warranty, but Hall Farms failed to meet its burden of proof by presenting evidence about the meaning of this phrase, so Rispens was entitled to summary judgment. 601 N.E.2d at 435–6. Whether Rispens gave an express warranty which was breached encompasses a question of fact: in the seed industry, does "high grade" connote some promise that the seeds will be free from disease or is it mere puffing. However, it is Rispens' burden, as the movant, to show the absence of material fact. Having failed to do so, Rispens is not entitled to summary judgment on the express warranty claim.

**B. *Implied Warranties***

■ Hall Farms alleged that both Petoseed and Rispens breached certain implied warranties. The Court of Appeals held that the language on the Petoseed seed can had effectively excluded any implied warranty. 601 N.E.2d at 437. Hall Farms

does not seek transfer on that holding.[2]

With respect to Rispens, the Court of Appeals held that, although the language on Rispens' purchase order did not effectively exclude the implied warranty of merchantability, Rispens established such exclusion by usage of trade. *Id.* at 437–8. On transfer, Hall Farms argues that the Court of Appeals erred in deciding usage of trade as a matter of law. We agree.

Unless excluded or modified, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. *Ind.Code* § 26–1–2–314; *Travel Craft v. Wilhelm Mende* (1990), Ind., 552 N.E.2d 443, 444. Disclaimers of implied warranties are not favored and are strictly construed against the seller for reasons of public policy. *Woodruff v. Clark County*, 153 Ind.App. at 45, 286 N.E.2d at 196.

Effective disclaimers of implied warranties must be conspicuous; whether a term or clause is conspicuous is a question of law for the court. *Jones v. Abriani* (1976), 169 Ind.App. 556, 571, 350 N.E.2d 635, 645. Where a purported exclusion of implied warranties was located at the bottom of the reverse page of a contract, which page did not contemplate the signature of the buyer, the court could properly find that the purported disclaimer was not sufficiently conspicuous. *Jerry Alderman Ford Sales, Inc. v. Bailey* (1973), 154 Ind. App. 632, 645, 294 N.E.2d 617, 619. Usually, to exclude the implied warranty of merchantability, the disclaimer must contain the word "merchantability." *Travel Craft*, 552 N.E.2d at 444.

Here, the attempted disclaimer (1) did not mention the word merchantability, (2) appeared on the reverse side of the purchase order which did not require a signature, and (3) was not conspicuous. *Jerry Alder-*

*man*, 154 Ind.App. at 645, 294 N.E.2d at 619.

Notwithstanding, Rispens argues that even if the content of the disclaimer did not conform to certain requirements, the warranties were effectively disclaimed by usage of trade. An implied warranty may be excluded or modified by usage of trade. *Ind.Code* § 26–1–2–316(3)(c). A usage of trade is "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." *Ind.Code* § 26–1–1–205(2). Commercial acceptance of a usage of trade "makes out a *prima facie* case that the usage is reasonable, and the burden is no longer on the usage to establish itself as being reasonable." *Ind.Code* § 26–1–1–205, cmt. 6. A buyer need not have actual knowledge of the usage of trade. *See Western Industries, Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198, 1203 (7th Cir.1984); *White & Summers*, § 3–3. It is sufficient either that the usage of trade is used in the vocation or trade in which the contracting parties are engaged or that the usage is one of which the parties are or should be aware. *Ind.Code* § 26–1–1–205(3).

Rispens and Hall Farms are not in the same trade; Rispens is in the business of selling seeds while Hall Farms is in the business of planting seeds and producing crops. Thus, Rispens can effectively negate the implied warranty of merchantability only by establishing that Hall Farms was or should have been aware of the asserted usage of trade. To do so, Rispens submitted affidavits from, among others, the Executive Vice–President of the American Seed Trade Association, which stated that the implied warranty of merchantability is uniformly disclaimed by seed merchants. Hall Farms submitted no evidence suggesting otherwise. To show that Hall

---

**2.** In addition, we note that the lack of privity between Hall Farms and Petoseed would also defeat any action by Hall Farms against Petoseed for breach of an implied warranty. In Indiana, privity between the seller and the buyer is required to maintain a cause of action on

the implied warranties of merchantability, *Ind. Code* § 26–1–2–315. *Prairie Prod., Inc. v. Agchem Div.–Pennwalt Corp.* (1987), Ind.App., 514 N.E.2d 1299, 1301; *Candlelight Homes, Inc. v. Zornes* (1981), Ind.App., 414 N.E.2d 980, 982.

Farms should be charged with this knowledge, Rispens submitted purchase orders used by another seed company with whom Hall Farms had dealt in the past which also disclaimed the implied warranty of merchantability. In response, Hall Farms submitted testimony of Mark Hall to the effect that he had never read such disclaimers on the purchase orders. With these conflicting facts, we cannot conclude, as a matter of law, that Hall Farms is charged with the knowledge that seed distributors routinely disclaim implied warranties of merchantability. Therefore, whether the implied warranty of merchantability was disclaimed by usage of trade is a question of fact which must be resolved at trial. Summary judgment on the implied warranty of merchantability is not appropriate for Rispens.

## II. *Limitation of Liability on Warranty Claims*

We next address the validity of the attempts by Petoseed and Rispens to limit the amount recoverable under the warranties that accompanied the sale of the seeds. Petoseed and Rispens assert that they effectively limited Hall Farms' remedy, if any, to the purchase price of the seed. Hall Farms responds that these limitations are unenforceable because they fail in their essential purpose and are unconscionable. We hold that, although such limitations are enforceable generally, there remains a question of fact as to their applicability here.

Buyers and sellers may agree on a limitation of remedy. *Ind.Code* § 26–1–2–719.[3] A "limitation of remedy" acknowledges the quality commitment of a warranty, but restricts the type or amount of

remedy available once a breach has been established. *Hahn v. Ford Motor Co.* (1982), Ind.App., 434 N.E.2d 943, 952–3. Limitations of remedy are not favored in Indiana and are strictly construed against the seller on the basis of public policy. *Id.* at 948.

### A. *Failure of Essential Purpose.*

Hall Farms argues that limiting recovery to the cost of the seed fails of its essential purpose because: (1) the presence of the bacteria was a novel circumstance not contemplated by the parties; and (2) Hall Farms bargained for seed which would produce a money crop, it will be deprived of the substantial value of its bargain if the limitation is enforced. We hold that limitation on the measure of damages does not fail of its essential purpose.

Commentators have suggested that § 2–719, as it relates to failure of essential purpose, is not concerned with arrangements which were oppressive at the inception which is a question of unconscionability, but with the application of an agreement to "novel circumstances not contemplated by the parties." *White & Summers*, § 10–12. In addition, they have suggested that this provision should be triggered when the remedy fails of *its* essential purpose, not the essential purpose of the UCC, contract law, or of equity. *Id.* One author suggests that the method used to decide whether a particular limitation fails of its essential purpose is to identify the purpose underlying the provision and determine whether application of the remedy in the particular circumstances will further that purpose. If not, then, and only then, is there a failure of essential purpose.

---

**3.** *Ind.Code* § 26–1–2–719. provides:

(1) Subject to the provisions of subsections (2) and (3) and of IC 26–1–2–718 on liquidation and limitation of damages:

  (a) the agreement may provide for remedies in addition to or in substitution for those provided in IC 26–1–2 and may limit or alter the measure of damages recoverable under IC 26–1–2, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

  (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy. (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in IC 26–1. (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not.

Jonathan A. Eddy, *On The "Essential" Purposes of Limited Remedies: The Metaphysics of UCC § 2–719(2)*, 65 Cal.L.Rev. 28, 36–40 (1978). Thus, for example, where the sale of a car was accompanied by the exclusive remedy of repair and replacement of defective parts but attempted repairs were ineffective in correcting the problems, the purchaser was entitled to recover an amount in excess of the cost of repairs. *Riley v. Ford Motor Co.*, 442 F.2d 670 (5th Cir.1971). The exclusive remedy of repair and replacement of defective parts failed of its essential purpose because the car could not be repaired so as to operate free of defects as promised in the express warranty. *Id.*

*Petoseed.* Here, the label on the Petoseed can stated in pertinent part:

2. **LIMITATION OF LIABILITY:** Purchaser's exclusive compensation for loss or damage arising from purchase or use of seed from Petoseed Co., Inc., shall be limited to an amount equal to the purchase price of the seed. There shall not be included any amount for incidental or consequential damages, nor for amounts expended in using or growing such seed, nor for harvesting the produce of such seed. This limitation of liability shall be applicable to any claims presented to Petoseed, regardless of the legal theory forming the basis of such claim, and whether such theory involves negligence, contractual liability, or otherwise.

This provision clearly states that liability is limited to the purchase price of the seed, and does not allow any amount for incidental or consequential damages such as Hall Farms' lost profits. Obviously, the purpose of the limitation was to limit contract liability to the purchase price of the seed. The contract term has not failed of its essential purpose; rather, enforcement of the limitation will serve precisely the purpose intended.

*Rispens.* Rispens' contract conditions on the reverse side of the invoice provided:

Paragraph 10. ... In [any] event, however, the seller shall not be liable to the purchaser for any loss or damages in a sum greater than the invoice price of the

individual lot of seed which is the cause of the complaint, arbitration or action at law.

Paragraph 11. ... Our liability, in all instances, is limited to the purchase price of the seed.

The intent of this limitation of liability is also clear. Limiting any warranty recovery to the price of the seed serves the intended purpose of the limitation.

We do not accept Hall Farms' assertion that the presence of the watermelon fruit blotch was a novel circumstance not contemplated by the parties because the fact that the seeds might not conform to the warranties is a possibility that should occur to both buyer and seller.

As to the benefit of the bargain argument, Hall Farms bargained for seed, not, as its argument suggests, for a full-grown crop of watermelons. If Hall Farms deemed recovery of the purchase price inadequate, then it was free to bargain for a more comprehensive remedy. Therefore, the terms limiting Hall Farms' remedy against Petoseed to the purchase price of the seeds have not failed of their essential purpose.

**B. *Unconscionability.***

Hall Farms also argues that the limitation of liability is substantively unconscionable because farmers will be denied a minimum adequate remedy while giving seed manufacturers and distributors effective immunity from liability in a situation where the defect in the seed was latent.

*Ind.Code* § 26–1–2–719(3) provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Unconscionability is a question of law determined on the basis of circumstances existing at the time the contract was made. *Ind.Code* § 26–1–2–302(1). The party raising the issue bears the burden of proof. *Hahn v. Ford Motor*, 434 N.E.2d at 950.

"Substantive unconscionability" refers to oppressively one-sided or harsh terms of a

contract, and generally involves cases where courts have determined the price to be unduly excessive or where the terms of the contract unduly limit a buyer's remedies. *Hahn,* 434 N.E.2d at 951. A substantively unconscionable contract is one that no sensible man would make and such as no honest and fair man would accept. *Weaver v. American Oil Co.* (1972), 257 Ind. 458, 462, 276 N.E.2d 144, 146. Often there are circumstances which show that there was unequal bargaining power at the time the contract was executed which led the party with lesser power to enter it unwillingly or without knowledge of its terms. *Dan Purvis Drugs, Inc. v. Aetna Life Ins.* (1981), Ind.App., 412 N.E.2d 129, 131; *see also Sho–Pro of Indiana, Inc. v. Brown* (1992), Ind.App., 585 N.E.2d 1357, 1360.

In keeping with this standard, Indiana courts have rejected claims that contractual limitations of remedy are substantively unconscionable. *Carr v. Hoosier Photo Supplies, Inc.* (1982), Ind., 441 N.E.2d 450, 454 (film processor's receipt issued to knowledgeable consumer); *Hahn,* 434 N.E.2d at 952 (automobile warranty issued to consumer); *General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, 411 (alarm system contract).

Hall Farms argues that the limitation of remedy was substantively unconscionable because the defect in the seed was latent, not being discoverable until the plants began growing. Once discovered, the growing season was too far along for Hall Farms to replant. Thus, Hall Farms asserts that for the loss occasioned by the infected seeds to fall only upon Hall Farms would be unconscionable. Hall Farms cites *Martin v. Joseph Harris Co., Inc.,* 767 F.2d 296 (6th Cir.1985), and *Lutz Farms v. Asgrow Seed Co.,* 948 F.2d 638, 646 (10th Cir.1991), as examples of latent defects rendering a limitation of remedy unconscionable. There are also cases holding that such limitations are not unconscionable. *See, e.g., Estate of Arena v. Abbott & Cobb, Inc.* (1990), 158 A.D.2d 926, 551 N.Y.S.2d 715 (remedy limited to the purchase price of seed); and *Southland Farms, Inc. v. Ciba–Geigy Corp.* (1991), Ala., 575 So.2d 1077, 1079–81 (consequential damages limited for agricultural chemical).

We are not persuaded that the limitation is unconscionable simply because the defect is latent. Although a seller may not limit liability for a defect which he knows to be nonconforming to warranties without disclosing that knowledge, the evidence is not conclusive that either Petoseed or Rispens was aware that the seeds carried disease. The possibility that a latent defect may exist is one of the risks present at the time the contract is formed. Had the parties contemplated this possibility, Indiana law would have left them free to allocate that risk as they saw fit. It is not unconscionable for the seed producer and distributor to redistribute such risks.

■ Left unanswered, however, is whether the parties *in fact* agreed to redistribute the risk of a latent defect in the seed. The question is whether there was mutual assent to the limitation of liability contained on the Petoseed can and the Rispens purchase order. Contract formation requires mutual assent on all essential contract terms. *Carr v. Hoosier Photo,* 441 N.E.2d at 455. Without mutual assent, the limitations are ineffective as a matter of law. *Hahn,* 434 N.E.2d at 948. Assent to a limitation of liability may be assumed where a knowledgeable party enters into the contract, aware of the limitation and its legal effect, without indicating non-acquiescence to those terms. *Carr,* at 455. However, the intention of the parties to include a particular term in a contract is usually a factual question determined from all of the circumstances. *Sho–Pro,* 585 N.E.2d at 1360.

Therefore, we must determine if there is a genuine issue of fact about whether Hall Farms assented to the limitation of liability.

■ *Petoseed.* Petoseed's limitation appeared in the printed material on the label affixed to the side of the seed cans. Mark Hall testified that, although he read the printed material on the top of the can

which Hall Farms asserts gave an express warranty, he did not read the material on the side of the can relating to the limitation of liability. Thus, whether there was mutual assent to the limitation of liability is a question of fact precluding summary judgment.

*Rispens.* Rispens' limitation appeared on the reverse side of the purchase order for the seeds. This side of the purchase order did not require Hall's signature and he testified that he did not read it. Therefore, there is a question of fact about whether Hall Farms intended to accept the limitation of liability from Rispens.

### III. Limitation of Liability on Tort Claims

The Court of Appeals held that even on tort theories,[4] "because this litigation stems from a buyer's dissatisfaction with a purchased product, it is governed in large part by the sales provisions of the Uniform Commercial Code." 601 N.E.2d at 441. The court then held that Rispens and Petoseed had effectively limited liability to the purchase price of the seed, whether the theory of recovery was contract or tort. *Id.* at 444. Hall Farms asserts that the Court of Appeals erroneously applied UCC provisions to the tort actions. Defendants respond that no principle of law prohibits commercial entities from limiting liability by contract where the only losses are economic. However tempted we may be to resolve this issue, our resolution of the viability of the strict liability in tort claims in part IV of this opinion renders this issue moot. The resolution of this issue, there-fore, must await another case in which such issue arises.

### IV. Strict Liability in Tort Claim[5]

### A. "Sudden, Major" Damage to Property.

■ Defendants argue that they are entitled to summary judgment on the strict liability claim because the damage sustained by Hall Farms was not sudden, major damage as required by the Strict Product Liability Act.[6] *Ind. Code Ann.* §§ 33–1–1.5–1 through 33–1–1.5–8 (West 1983 and Supp.1992).

The Act subjects sellers of defective products to liability for physical harm caused by that product to the user or consumer or to his property. *Ind. Code Ann.* § 33–1–1.5–3 (West Supp.1992). "Physical harm" is defined as "bodily injury, death, loss of services, and rights arising from any such injuries, as well as *sudden, major damage to property. The term does not include gradually evolving damage to property or economic losses from such damage."* *Ind. Code* § 33–1–1.5–2 (emphasis added). The undisputed evidence establishes that the Act does not permit recovery of the damages claimed in this case.

In earlier versions of the Act and at common law, there was no restriction on the type of property damage recoverable. However, the Act was amended in 1983 to limit recovery for property damage to "sudden, major" damage. *Ind. Code* § 33–1–1.5–2; *Reed v. Central Soya* (1993), Ind., 621 N.E.2d 1069, 1071. In *Reed,* we examined the meaning of "sudden, major dam-

---

**4.** Hall Farms sought recovery in negligence and strict liability in tort.

**5.** At the outset, we note that the Court of Appeals held that Rispens was entitled to summary judgment on the strict liability claim because Hall Farms had submitted no evidence to support its claim that Rispens was liable. 601 N.E.2d at 438. That is an incorrect holding as it relates to the strict liability claim. The Strict Product Liability Act provides that anyone who puts into the stream of commerce a defective product unreasonably dangerous to any user is subject to liability for physical harm. *Ind. Code* § 33–1–1.5–3. If Hall Farms submitted sufficient evidence that Petoseed, the manufacturer, was subject to liability under the Act, then *ergo,* Rispens, the distributor, is also subject to liability under the Act. Not until after liability is established may a distributor, who is otherwise without fault, obtain indemnity against the manufacturer. *Ind. Code* § 33–1–1.5–6; *Four Winns, Inc. v. Cincinnati Ins. Co.* (1984), Ind. App., 471 N.E.2d 1187, 1189–90; *Coca–Cola Bottling Co. v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370, 374.

**6.** This Act has been commonly referred to as the "Product Liability Act" although the legislature gave it no formal title. Because the Act now applies only to product liability actions based on strict liability in tort and not to actions based on negligence, we refer to it here as the "Strict Product Liability Act."

age" and concluded that where recovery for property damage is sought under the Act, such damage must have happened quickly, unexpectedly and be of a calamitous nature. We also held that the question of whether sudden, major damage had occurred is a question of law, taking into account such matters as the nature of the defect alleged, the type of risk presented and the manner in which the damage arose. 621 N.E.2d at 1071. Thus, in *Reed,* we concluded that where cows had become ill over a period of weeks after consuming tainted feed, the damage was not sudden, major damage to property. *Id.* Similarly, where a farmer loses numerous chickens over a period of several months, such damage is not recoverable under the Act because that loss is not sudden, major damage. *Mac's Eggs, Inc. v. Rite–Way Agri Dist.,* 656 F.Supp. 720 (N.D.Ind.1986). By comparison, the malfunction of an electrical switch resulting in numerous chickens suffocating in a single episode is sufficient to support the inference at the pleading stage that the damage was sudden, major damage to property. *Yasuda Fire & Marine Ins. v. Lake Shore Elec. Corp.,* 744 F.Supp. 864, 871 (S.D.Ind.1990).

■ Defendants argue that the damage here was not sudden, major damage because it occurred gradually over a number of months. In fact, Mark Hall testified that the fruit blotch infection was "an extremely slow growing thing." The bacteria affected the watermelon crop over a period of months, first appearing in the greenhouse and progressing over time to the melons themselves. We hold that this is not the type of sudden, major damage to property contemplated in the Act; but is instead, gradually evolving damage to property and economic loss from that damage in the form of reduced crop yields.

■ Additionally, we note that Hall Farms' claim is based on damage to the product itself. Strict liability in tort is inapplicable to claims of such damage because the proper remedy is warranty. *See*

*Sanco, Inc. v. Ford Motor Co.,* 771 F.2d 1081, 1086 (7th Cir.1985); *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450 (1982).

For the reasons stated above, Petoseed and Rispens are entitled to summary judgment on the strict liability claim.

### V. *Negligence Claim*

The Court of Appeals granted summary judgment to Petoseed because Hall Farms had failed to submit sufficient authenticated evidence to raise a question of fact on its negligence claim. Hall Farms seeks transfer from this grant of summary judgment.[7] Because we agree with Petoseed that it is entitled to summary judgment on substantive grounds, we do not address the many procedural arguments discussed in the litigants' briefs.

■ Hall Farms alleged that Petoseed negligently marketed seeds that Petoseed knew or should have known were infected with watermelon fruit blotch disease, and that as a result, Hall Farms was left with a damaged crop that resulted in lost profits. In other words, the basis of the negligence claim is that the product failed to perform as expected. Petoseed asserts that, as a matter of law, Hall Farms may not recover in negligence because Hall Farms seeks only economic damages. We agree.

■ Economic loss is defined as the loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold, and includes such incidental and consequential losses as lost profits, rental expense and lost time. *Reed v. Central Soya* (1993), Ind., 621 N.E.2d 1069, 1074. The general rule in Indiana is that where a negligence claim is based upon the failure of a product to perform as expected and the plaintiff suffers only economic damages, no recovery may be had in negligence; instead, the buyer's remedy lies in contract. *Prairie Prod., Inc. v.*

---

7. Summary judgment in negligence was granted for Rispens, but Hall Farms does not seek transfer on this issue.

*Agchem Div.–Pennwalt Corp.* (1987), Ind. App., 514 N.E.2d 1299, 1304. This is the majority view. *See W. Page Keeton et al., Prosser and Keeton on the Law of Torts,* § 101, at 708 (5th ed. 1984).

In *Prairie Production,* despite representations to the contrary, a pesticide was ineffective against corn earworms and some of the crop was lost to the insect damage. Plaintiff sued the manufacturer in negligence to recover lost profits. In holding that economic losses which flow from the failure of a product to perform as expected are not recoverable in negligence, the court cited with approval *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In *Seely,* the plaintiff sued for lost profits and the purchase price of a defective truck. In concluding that the plaintiff could have recovered lost profits only under an express warranty, Justice Traynor discussed the need to distinguish between tort and warranty remedies in product liability cases:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufactur-

er's liability is limited to damages for physical injury and there is no recovery for economic loss alone.

*Id.* 45 Cal.Rptr. at 22, 403 P.2d at 151 (citations omitted). *See also Sanco v. Ford Motor,* 771 F.2d 1081. Similarly, in *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978), the plaintiff sued the manufacturer of a tractor for repair costs and lost profits due to the continued malfunctioning of the tractor. The Idaho Supreme Court reversed a trial court judgment granting plaintiff negligence damages. The court noted that the plaintiff had not alleged any personal injury or property damage and held that the purchaser of a defective product who suffered only economic losses could not recover those losses in negligence. The court observed that:

> The law of negligence requires the defendant to exercise due care to build a tractor that does not harm person or property. If the defendant fails to exercise such due care it is of course liable for the resulting injury to person or property as well as other losses which naturally follow from that injury. However, the law of negligence does not impose on International Harvester a duty to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business.

581 P.2d at 789. So, too, in *Moormon Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443, the plaintiff purchased a grain storage tank which cracked. Plaintiff sued in negligence for the cost of repairing the tank and for the loss of its use. The Illinois Supreme Court held that in the absence of personal injury or property damage, such economic losses could only be recovered under the breach of warranty provisions of the Uniform Commercial Code.

There are several justifications for adhering to this rule. The law of sales set out in Article 2 of the Uniform Commercial Code governs the economic relations between buyer and seller, and a dissatisfied buyer may avail himself of the remedies fashioned by the legislature in the Uniform

Commercial Code. If a buyer were allowed to recover economic loss under a negligence theory, he could, in effect, circumvent the seller's limitation or exclusion of warranties permitted under the Uniform Commercial Code. Relegating the purchaser to warranty remedies prevents a manufacturer from being held liable for damages of unknown and unlimited scope. *Prairie Production,* 514 N.E.2d at 1304–5; *see generally* David B. Gaebler, *Negligence, Economic Loss, and the U.C.C.,* 61 *Ind.L.J.* 624–629 (1986). Therefore, we see no necessity to break from the majority view. Economic losses are not recoverable in a negligence action premised on the failure of a product to perform as expected unless such failure causes personal injury or physical harm to property other than the product itself.

### Conclusion

In summary, we grant transfer, vacate the opinion of the Court of Appeals, and remand this case to the trial court with directions to enter summary judgment against Hall Farms on all claims except those of breach of express warranties as to both defendants and breach of the implied warranty of merchantability as to Rispens and to proceed in a manner consistent with this opinion.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs and dissents, with separate opinion.

DICKSON, Justice, concurring and dissenting.

I dissent to the majority opinion's determination that the plaintiff's damage was not sudden but gradually-evolving, thus precluding recourse under the Indiana Strict Products Liability Act. The issue is one of fact and should be left for determination at trial.

In contrast to the majority's emphasis on the slow development of fruit blotch infection of the watermelon crop generally, I prefer the view of the Court of Appeals:

The determination of whether damage is "sudden" will necessarily depend on the unique facts of each controversy, and will ordinarily be resolved by the trier of fact. We also agree that in making this determination, factors such as the nature of the defect, the type of the risk, and the manner in which the injuries arose should be considered. The facts here are not so one-sided as for us to be able to say, as a matter of law, that Hall Farms's damage was or was not sudden. Resolution of this issue is properly left for the fact finder.

*Martin Rispens & Son v. Hall Farms, Inc.,* (1992), Ind.App., 601 N.E.2d 429, 439 (citations omitted).

For purposes of the summary judgment proceeding, it is understood that Hall Farms claims destruction of its 1989 watermelon crop from fruit blotch caused by bacteria carried on or in hybrid watermelon seed produced by Petoseed Company, Inc. and purchased through Martin Rispens & Son, Inc. The seeds were planted in greenhouses, and the resulting seedlings were transplanted to fields approximately one month later. At harvest time, the disease first appeared on a watermelon as a pea-sized dot which grew quickly, ultimately manifesting itself as a large purple blotch on the growing melon. Soon after some watermelons were first seen with the blotch, the condition was observed throughout the entire field.

Unclear, however, are substantial questions of fact. Were all of the Prince Charles variety seeds affected by the bacteria at the time of purchase, or were just some of the seeds infected whereby the disease was transmitted to otherwise healthy seeds or plants in the fields? Was the damaged watermelon crop exclusively the fruit of the Petoseed hybrid seed, or did the damaged crop include watermelon grown from other seed? Also unresolved is whether the acquisition of the bacteria by an otherwise healthy seed or plant necessarily produces an unhealthy plant and results in damaged watermelon. The answers to these unresolved questions could demonstrate that a "sudden" event oc-

curred with the transmittal of bacteria to healthy seeds or plants, rather than through the process of germination, growth, and development of blighted fruit. The factfinder could find such transmittal to be "losses resulting from sudden, major damage," thus constituting damages available under the definition of "physical harm" in the Indiana Strict Products Liability Act.

I further dissent to the conclusion that Hall Farms' claim is based on damage to the product itself. The majority opinion observes that strict liability in tort is inapplicable to claims of damage to the product itself, citing *Sanco, Inc. v. Ford Motor Co.* (7th Cir.1985), 771 F.2d 1081, 1086, and *Moorman Mfg. Co. v. National Tank Co.* (1982), 91 Ill.2d 69, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450. However, unlike the manufactured products in these cases, the damages claimed by Hall Farms is the harm to an agricultural crop produced not only from the initial seed product but also from the growing process and involving the care and nutrients provided in the Hall Farms greenhouse and fields. Indiana Code § 33-1-1.5-3 imposes strict liability in tort upon persons who sell certain defective products. The defendants sold seeds, not watermelons; the product was the initial watermelon seed, not the ensuing watermelon crop. Because it is the damage to the crop which is sought, recovery of such damage should not be precluded on grounds that it is damage to the product itself.

In all other respects, I concur with the majority.