Edward P. MILLER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 76A03–8903–CR–121.[1]

Court of Appeals of Indiana,
First District.

Sept. 5, 1989.

Randy Coffey, Chief Public Defender for Steuben County, Angola, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Edward P. Miller appeals his conviction of operating a motor vehicle while intoxicated, a class D felony.

We affirm.

Miller argues in this appeal:

(1) that the trial court committed fundamental error by admitting, over his objection, portions of a video tape which recorded his refusal to waive his *Miranda* rights after the rights were explained to him;

---

1. This case has been diverted from the Third District by direction of the Chief Judge.

(2) that the State of Indiana offered insufficient evidence of his identity as a recidivist to support the enhancement of this offense to a class D felony; and

(3) that the sentence imposed by the trial court is manifestly unreasonable because the trial court failed to consider mitigating circumstances and found aggravating circumstances not supported by the record.

## I.

■ Miller's first allegation of error in this appeal concerns the State's playing of an unedited video tape displaying, along with Miller's demeanor and conduct on the evening of his arrest, Miller's invocation of his right to remain silent. Relying primarily upon *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 and its progeny, Miller argues the trial court committed fundamental error when it permitted the State to show the video tape without editing the *audio* portion dealing with Miller's post-*Miranda* silence. We will assume Miller's objection is best resolved by resort to the principles annunciated in *Doyle,* and not Fifth Amendment concepts generally.

*Doyle* held that the State's use for impeachment purposes of a defendant's silence, at the time of his arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. *Id.* 426 U.S. at 619, 96 S.Ct. at 2245. In each of the cases in which the United States Supreme Court has since applied the rule in *Doyle,* the trial court permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence. *Greer v. Miller* (1987), 483 U.S. 756, 764, 107 S.Ct. 3102, 3108, 97 L.Ed.2d 618. *See, e.g., Jenkins v. Anderson* (1980), 447 U.S. 231, 233–234, 100 S.Ct. 2124, 2126–27, 65 L.Ed.2d 86 (extended questioning and closing argument reference); *Anderson v. Charles* (1980), 447 U.S. 404, 405–406, 100 S.Ct. 2180, 2180–81, 65 L.Ed.2d 222 (questioning); *Fletcher v. Weir* (1982), 455 U.S. 603, 603–604, 102 S.Ct. 1309, 1310–11, 71 L.Ed.2d 490 (questioning); and, *Wainwright v. Greenfield* (1986), 474 U.S. 284, 287, 106 S.Ct. 634, 636, 88 L.Ed.2d 623 (closing argument). Although these cases have in the past been construed to prohibit adverse *comment, see, e.g., Fletcher v. Weir, supra,* 455 U.S. at 605, 102 S.Ct. at 1311; *Wainwright v. Greenfield, supra* (Rehnquist, J., concurring); *Greer v. Miller, supra* (Brennan, J., dissenting), it is now clear that a *Doyle* violation occurs when the State succeeds in making affirmative use of the defendant's exercise of his rights in obtaining his conviction. *See, Greer, supra* 483 U.S. at 763, 107 S.Ct. at 3107; *Greenfield, supra* 474 U.S. at 293, 106 S.Ct. at 639. As the court stated in *Greenfield,* "what is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." 474 U.S. at 295, 106 S.Ct. at 640.

At this point, it might be useful to establish what did not occur with respect to appellant Miller's exercise of his right to remain silent. The State did not seek to highlight the fact that Miller had chosen to remain silent. No questions were asked of the officer sponsoring the video tape or of Miller himself concerning the conversation. The prosecutor did not ask the jury during closing argument to draw an inference from the fact that Miller chose to remain silent. Neither did the prosecutor point to Miller's actual words in invoking the right as substantive evidence of his intoxication. The prosecutor simply did not comment in any way upon that portion of the tape. The court gave no specific curative instruction which would have drawn attention to the fact that Miller decided not to respond to questioning and Miller did not request such an instruction. Finally, the tape itself, considering the circumstances, is relatively innocuous. Miller was not prodded in any way by the police officer concerning his decision to remain silent. The sequence occurred at the very end of the tape after the officer tried, for several minutes, to obtain a breath sample from Miller. The officer read the Miranda warnings to Miller twice, asked Miller if he wanted to answer questions, Miller mumbled something which for the most part is inaudible and the

tape concluded at that point. The objectionable portion of the tape at most concerns a single question and answer.

To the extent then that by "use" of a defendant's postarrest silence, *Doyle* precludes improper comment or active utilization by the State, patently, no *Doyle* violation occurred here because the State did not attempt to draw meaning from Miller's silence. However, the State could be said to have used Miller's garbled *response* as substantive evidence of intoxication because the jury could have considered Miller's response along with his other statements and general demeanor in reaching its determination that Miller was impaired by reason of alcohol consumption. *Compare, Wainwright v. Greenfield, supra* (prosecutor urged jury to infer defendant was sane from invocation of right to remain silent). "Silence" includes the statement of a desire to remain silent as well as the defendant's actual muteness for purposes of identifying a *Doyle* infraction. *See, Wainwright v. Greenfield, supra,* 474 U.S. at 295, n. 13, 106 S.Ct. at 640, n. 13; *Wilson v. State* (1989), Ind., 514 N.E.2d 282. Consequently, if a *Doyle* violation occurred at all in this case, it would necessarily be because the State made evidentiary use of Miller's invocation of silence.

*Doyle* rests upon the unfairness occasioned by the State when it implicitly assures a suspect that his "silence will carry no penalty" and then breaches that implied assurance by using the defendant's exercise of his rights in obtaining his conviction. *See, Wainwright v. Greenfield, supra* 474 U.S. at 290, 106 S.Ct. at 637. *Doyle* and subsequent cases "have made clear that breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Greenfield,* 474 U.S. at 291, 106 S.Ct. at 638. Yet, Miller could have received no implicit assurance that the *invocation* of his right to remain silent would carry no penalty; Miller was explicitly advised that *anything* he said could be used against him. Accordingly, there was nothing fundamentally unfair about the State's introduction of evidence that Miller said he wanted to remain silent

or in permitting the jury to infer that Miller was intoxicated from his manner of speaking those words as the State gave Miller no reason to believe that his statements would not be used against him. Hence, we have in this case neither the inquiry which Doyle was designed to forbid, *see Greer v. Miller, supra,* nor the fundamental unfairness which necessitated the *Doyle* rule in the first instance.

Regardless of whether a *Doyle* violation in fact occurred, the principles developed in the cited cases strengthen, by comparison, our determination that the jury's exposure to the fact that Miller invoked his right to remain silent was harmless beyond a reasonable doubt and could not have affected the validity of the judgment itself or the integrity of the process. Again, this is not a case where any of the participants overtly called attention to Miller's postarrest silence. Neither is this a case where the State sought to use the defendant's silence as a means of impeaching him. Therefore, the danger that the jury might draw an unfavorable inference as to the truthfulness of Miller's trial testimony from his postarrest silence simply is not as great or critical as it was in *Doyle. See, U.S. v. Hale* (1975), 422 U.S. 171, 181, and 182–183, 95 S.Ct. 2133, 2138, and 2139–40, 45 L.Ed.2d 99 (White, J., concurring).

Furthermore, as the court noted in *U.S. v. Hastings* (1983), 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, a case addressing the prosecution's improper comment on the defendant's exercise of his right to remain silent at trial, there are some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the federal constitution, be deemed harmless and do not require an automatic reversal of the conviction. On the whole record, we are satisfied beyond a reasonable doubt that the error relied upon by Miller is such a harmless error, if error at all.

First, we reiterate that the rest of the video tape amply illustrated Miller's intoxicated state. It showed him slouched in a chair with his head lowered much of the

time. Miller's speech was also garbled and he was at times unresponsive to the officer's routine questions about his understanding of the breathalyzer and implied consent law.

The remainder of the State's case is equally compelling. The arresting officer first observed Miller at about 3:30 a.m. on the snowy morning of his arrest driving erratically and weaving back and forth across the center line of the highway. The officer activated his lights and ultimately his siren, but Miller sped up. Three other police units joined in the 17½ mile chase which ended at Miller's residence. The arresting officer testified that throughout the chase, the Miller vehicle continued to move across the center line then back to the far berm, and reached speeds of 65–75 m.p.h. At one point, the officer pulled up alongside Miller in an effort to cut Miller off but determined that Miller would likely ram into the police vehicle. Miller would not leave his vehicle when asked to do so and had to be forceably removed. At that point, the officers detected a strong odor of alcohol emanating from Miller. The officers had to assist Miller to the police vehicle because he could not maintain his balance. Miller's statements in the police car were mumbled and incoherent; at the police station, his speech was slurred and barely understandable. The arresting officer decided against dexterity tests, after attempts to obtain a breath sample failed, because Miller appeared to be in pain due to a hernia.

In defense, Miller offered his own testimony. He testified that he had a couple drinks of bourbon and water and a fish sandwich at about 9:00 p.m. at a tavern. From there, he went to "Skip's" where he continued to drink. Miller had no idea how many drinks he consumed during the five hours he was there. He admitted seeing the police car before he left "Skip's" but attributed his inability to see that it was a police car following him to a faulty back window defroster and a loud radio. He also reported health problems including the hernia, emphysema, polio in his left leg, and hearing difficulties, and explained that his car had loose steering. Miller also admitted that he drove as fast as 80 m.p.h. that evening.

Hence, even if the jury resolved conflicts in the evidence favorably to Miller, it still could have determined, based upon the uncontradicted testimony that Miller was operating his vehicle in an impaired condition. The State's case against Miller is overwhelming and we are convinced that the admission of evidence that he exercised his right to remain silent at the time of his arrest was harmless error, if error at all.

## II.

■ Miller contends the evidence is insufficient to support the enhancement of his conviction to a class D felony pursuant to IND.CODE 9–11–2–3. To sustain the conviction as a class D felony, the State must show that the defendant has a previous conviction of operating while intoxicated and that the previous conviction of operating while intoxicated occurred within five years immediately preceding the charged violation of I.C. 9–11–2–2.

In support of the enhancement, the State offered a certified copy of a docket sheet in Cause No. CCR–85–97 reflecting that an Edward P. Miller, age 39, was charged on March 4, 1985 with operating a vehicle while intoxicated and pled guilty and was convicted on January 23, 1986. The State also presented the testimony of the arresting officer in this cause, who gave the name, address and date of birth given him by the defendant, and the testimony of a second officer who identified Miller as the individual he arrested and filed charges against in March, 1985. The officer involved in the March, 1985 arrest reported that he was given the same name, address, and date of birth from the defendant at the time of his arrest. He identified the docket sheet as the one involved in the case he filed against Miller and testified on cross-examination that he knew that case involved the same defendant from the date on the docket sheet. (R. 386).

■ In reviewing an allegation of insufficient evidence of identity, we must view the evidence and inferences in favor of the

jury's verdict. If the evidence yields logical and reasonable inferences from which a trier of fact may determine it was indeed the defendant who was convicted of the prior offense, a sufficient connection has been shown. *Hall v. State* (1988), Ind., 524 N.E.2d 1279, 1281. The proof of a prior conviction needed to elevate a misdemeanor charge to a felony is analogous to that necessary to prove an habitual offender status by prior convictions. *Id.*

In *Baird v. State* (1986), Ind., 497 N.E.2d 538, the appellant argued that the evidence was insufficient to establish his identity as the perpetrator of a robbery in 1980 because the arresting officer who identified him as the offender in the robbery was not actually present at the conviction and sentencing reflected in the court records. The Indiana Supreme Court held that since the officer identified the robbery as the one he helped investigate and identified the appellant as the one charged with it, the evidence was sufficient to sustain the conviction.

Likewise, in *Earls v. State* (1986), Ind., 489 N.E.2d 516 the supreme court affirmed a conviction despite an allegation that the evidence was insufficient, where the State offered the testimony of a police officer that he was present when the defendant was charged with the second felony but was not present when the defendant was convicted.

Finally, in *Barker v. State* (1986), Ind., 491 N.E.2d 522 the appellant's conviction as an habitual offender was affirmed based upon court records showing two prior felonies committed by an Antonio Barker and testimony from police officers who worked on the cases that the defendant was the same Antonio Barker mentioned in the documents.

Here, the police officer who arrested Miller in March, 1985 and filed the charge against him testified that from the date on the docket sheet he knew the defendant to be the same Edward P. Miller whom he arrested and charged. The officer's identification is strengthened by the age of the defendant in the 1986 conviction. This defendant, Edward P. Miller, would have been 39 years old in January, 1986. Therefore, based upon the authority cited above, we conclude the evidence is sufficient to sustain the verdict.

### III.

Lastly, Miller contends the sentence he received is manifestly unreasonable because the aggravating circumstances cited by the court are not supported by the record and because the sentencing court failed to consider mitigating circumstances.

■ The court found among the aggravating circumstances justifying the four-year sentence that Miller had two other operating while intoxicated convictions and a conviction of driving with a suspended license. The court also observed that Miller had just been sentenced by the court and placed on probation when the instant offense occurred, and that Miller had been given an opportunity to recognize that he had an alcohol problem but that Miller had not availed himself of the opportunity to reform himself with respect to his condition in any way.

We find ample support in the record for each of the aggravating circumstances identified by the court in its sentencing order. The presentence report, dated September 2, 1988, shows that Miller was sentenced on the DWI conviction in Steuben County which served as the basis of the enhancement in this case on January 23, 1986. He received a suspended sentence, one year of informal probation and was ordered to attend "AAP at Northeastern Center." A driving while suspended charge was dismissed as part of the plea agreement. The offense which is the subject of this appeal occurred on February 19, 1986.

Before the instant offense went to trial, Miller was charged a second time in Steuben County with DWI and DWS (suspended). These matters were still pending at the time of sentencing. A change of plea hearing had been scheduled twice but Miller failed to appear both times.

In DeKalb County, Miller had been convicted, on April 17, 1986, with DWI, as a class D felony, DWS and resisting law enforcement.

Although Miller maintains the trial court is obligated to consider evidence of mitigating factors, he has not pointed to any particular circumstance which the court should have but failed to consider. When the court makes use of mitigating factors either to reduce a presumptive sentence or to offset aggravating factors, it must describe the mitigating factors and the facts underlying them. *Brown v. State* (1987), Ind., 516 N.E.2d 29, 31. However, if the court finds there are no significant mitigating factors, their use in determining sentence is not mandatory and the court is under no obligation to identify or balance the factors argued by the defendant. *Id.* It is within the province of the sentencing court to find aggravating circumstances outweighed any potentially mitigating factors so that the latter need not be identified or balanced. *Id.*

A sentence is not manifestly unreasonable unless no reasonable person could find it appropriate to the particular offense and offender. *Id.* We find nothing unreasonable about the sentence imposed given the state of Miller's record and the nature and circumstances of this offense.

Judgment affirmed.

BAKER, J., concurs.

GARRARD, P.J., concurs in result.