**Gail ROGERS and Robert Rogers, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Bendix Safety Restraints, Inc. and AlliedSignal, Inc., Defendants.**

**No 3:94cv819 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

May 16, 1996.

Patrick F. O'Leary, Goshen, IN, for Gail Rogers and Robert Rogers.

Mark D. Boveri, John T. Mulvihill, Sr., Barnes and Thornburg, South Bend, IN, Amy L. Mader, Baker and Daniels, South Bend, IN, Richard E. Steinbronn, Barnes and Thornburg, Fort Wayne, IN, Byron K. Mason, Indianapolis, IN, Kathleen M. Anderson, Barnes and Thornburg, Fort Wayne, IN, for Ford Motor Co.

Eric A. Riegner, Lloyd H. Milliken, Locke Reynolds Boyd and Weisell, Indianapolis, IN, for Bendix Safety Restraints, Inc. and Allied-Signal, Inc.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This matter is before the court on the parties' motions for summary judgment. The plaintiffs have moved for partial summary judgment against defendants Bendix Safety Restraints, Inc., and AlliedSignal, Inc., on the ground that defendants Bendix and AlliedSignal are collaterally estopped from disputing the issue of defective design. Bendix and AlliedSignal (collectively "Allied-Signal")[1] have moved for complete summary judgment on both the plaintiffs' common law negligence and statutory strict liability claims. Defendants Ford Motor Company ("Ford") and AlliedSignal also have moved for partial summary judgment as to the issue of punitive damages. This court has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## I. FACTS

Plaintiff Gail Rogers was injured in an automobile accident on November 11, 1992, when the vehicle she was riding in sustained a driver's side impact in a collision with another vehicle. She was a front-seat passenger in a 1988 Lincoln Town Car operated by her husband, plaintiff Robert Rogers. The Rogers's vehicle was manufactured by defendant Ford and contained seat belt assemblies manufactured by defendant Allied-Signal.

The plaintiffs claim that Ms. Rogers sustained enhanced bodily injuries when the seat belt in the Rogers's vehicle inadvertently released during the accident, allowing Ms. Rogers to strike the dashboard and windshield.[2] Specifically, the plaintiffs contend that the seat belt assembly in their Lincoln Town Car was vulnerable to "inertial actuation," an engineering phenomenon which theoretically can occur when the housing of the seat belt buckle is abruptly accelerated from the back side while the spring-loaded seat belt button and attached portions of the latching mechanism remain momentarily at rest relative to the housing of the buckle, thereby simulating the ordinary depression of the button.[3] The plaintiffs' complaint seeks compensatory damages for Ms. Rogers's injuries and for Mr. Rogers's loss of consortium, as well as punitive damages and court costs.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no gen-

---

1. Although the plaintiffs' suit names as defendants both Bendix Safety Restraints and Allied-Signal, the defendants inform the court that Bendix Safety Restraints is merely an operating division of AlliedSignal, Inc., and not an independent corporate entity. Accordingly, the court will refer to these defendants collectively as AlliedSignal.

2. Indiana recognizes the so-called "crashworthiness" doctrine, which imposes upon auto manufacturers liability for design defects that, although not the cause of the initial accident, compound the occupants' resulting injuries when they strike the car's interior or objects outside the vehicle. In *Miller v. Todd*, 551

N.E.2d 1139 (Ind.1990), the Supreme Court of Indiana held that a defect is "not merely the conclusion that a product failed and caused injury, but that the product failed to provide the consumer with reasonable protection under the circumstances surrounding a particular accident." *Id.* at 1143.

3. Theoretically, the same effect could be produced by rapidly accelerating the seat belt housing from the front side and then abruptly decelerating the housing, thereby causing the button and attached portions of the latching mechanism to momentarily continue their downward path relative to the seat belt housing.

uine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56. Although the Supreme Court revisited the trilogy in *Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law, the most that can be said for *Eastman Kodak* is that it did not tinker with *Celotex* and *Anderson,* and possibly involved an attempt to clarify *Matsushita.* This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1991).

■ The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met its initial burden, the opposing party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56) (alteration added). The nonmoving party may not rest on its pleadings, *McGrath v. Gillis,* 44 F.3d 567,

569 (7th Cir.1995); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may the party resisting summary judgment rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

■ During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). Furthermore, the court is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

■ The contention of one party that there are no issues of material fact preventing entry of judgment in its favor does not bar that party from asserting that there are issues of fact sufficient to prevent the court from entering judgment as a matter of law against it. Where, as here, the opposing parties each submit motions for summary judgment, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24,* 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Instead, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Heublein,* 996 F.2d at 1461; *Judsen,* 889 F.Supp. at 1060; *Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd,* 9 F.3d 1198 (7th Cir. 1993).

### III. ANALYSIS

Plaintiffs Gail and Robert Rogers maintain that the defendants are liable under a theory of common law negligence for their failure (a) to design and manufacture seat belts not subject to inertial actuation; (b) to conduct reasonable tests to discover said defects; and

(c) to undertake or conduct a recall campaign prior to the date of Ms. Rogers's accident. In addition to their common law negligence claim, the plaintiffs also contend that the defendants are strictly liable under Indiana's Strict Product Liability Act, IND.CODE § 33–1–1.5–1 *et seq.*

### A. Plaintiffs' Motion for Partial Summary Judgment

■ The plaintiffs claim that the seat belt design installed in their Lincoln Town Car, known in the automotive industry as a "Type I" buckle, was conclusively adjudged defective by the verdict in *Hoch v. Ford Motor Co.,* No. 355962 (Cal.Sup.Ct. Nov. 13, 1991), *aff'd sub. nom Hoch v. Allied–Signal, Inc./Bendix Safety Restraints Div.,* 24 Cal. App.4th 48, 29 Cal.Rptr.2d 615 (Cal.Ct.App. 1994). In *Hoch,* a case which involved the fatal rollover of a 1987 Ford Bronco II, a San Mateo, California jury returned a special verdict finding that the design of the seat belt in the Bronco was defective at the time it left AlliedSignal's control. Accordingly, the plaintiffs argue that the use of collateral estoppel against AlliedSignal is appropriate here.

■ The doctrine of collateral estoppel operates to bar relitigation of an issue that was necessarily adjudicated in a prior suit, provided that there was a final judgment on the merits in a court of competent jurisdiction and an identity of issues between the prior and subsequent lawsuits. *Adams v. Marion County Office of Family & Children,* 659 N.E.2d 202, 205–06 (Ind.Ct.App.1995); *Hayworth v. Schilli Leasing, Inc.,* 644 N.E.2d 602, 604 (Ind.Ct.App.1994); *see Kimberlin v. DeLong,* 637 N.E.2d 121, 125 (Ind. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995); *Sullivan v. American Casualty Co.,* 605 N.E.2d 134, 137–39 (Ind.1992). Collateral estoppel is termed 'offensive' when, as here, "[a] plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979); *see Kimberlin,* 637 N.E.2d at 125; *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1037 (Ind. 1993).

■ Whether the device of offensive collateral estoppel should be allowed is subject to the trial court's discretion. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 651–52. Even if the threshold requirements for collateral estoppel have been met, the court must consider two additional factors in determining whether the use of collateral estoppel is proper: (1) whether the party against whom the prior judgment is asserted had a full and fair opportunity to litigate the issue; and (2) whether it would be otherwise unfair under the circumstances of the particular case to permit the use of collateral estoppel. *Kimberlin,* 637 N.E.2d at 125; *Tofany,* 616 N.E.2d at 1037; *Sullivan,* 605 N.E.2d at 138.

While the *Hoch* case unquestionably constitutes a final judgment on the merits, defendant AlliedSignal presents convincing evidence that the second threshold requirement—an identity of issues—is not present. There is a substantial question whether the seat belt buckle found to be defectively designed in *Hoch* and that alleged to have failed in the Rogers's vehicle represent an identity of issues for purposes of collateral estoppel. Although plaintiffs' expert witness Ned C. Myers states in his affidavit [4] that the seat belt buckle in the Rogers's 1988 Lincoln was designed identically to that in Sharon Hoch's 1987 Ford Bronco II, the affidavit of defense expert Daniel Davee provides sworn testimony that the two buckles were manufactured and assembled largely from different components with distinct part numbers and dissimilar weights.

4. Defendant AlliedSignal contends that, because Myers's affidavit states that the contents are based on "knowledge and belief" rather than on "personal knowledge," the facts and information contained in the affidavit are inadmissible under Rule 56(e), Fed.R.Civ.P. *See* AlliedSignal's Mem. in Opp'n to Plaintiffs' Mot. for Summ.J. at 7.

But the defendant reads Rule 56 too narrowly: so long as an affidavit demonstrates the affiant's personal knowledge, the facts and information contained therein are admissible. *See Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989).

■ Even if the two seat belt buckles share a common design and were manufactured by defendant AlliedSignal according to the same standards, the use of collateral estoppel is nonetheless inappropriate. Collateral estoppel should not be used to preclude relitigation of the issue of defective design relating to mass-produced products where the injuries arise out of distinct underlying incidents.[5] *See Cleveringa v. J.I. Case Co.*, 230 Ill.App.3d 831, 848, 172 Ill.Dec. 523, 536, 595 N.E.2d 1193, 1206 (Ill.App.Ct.1992); *Marlow v. American Suzuki Motor Corp.*, 222 Ill.App.3d 722, 736, 165 Ill.Dec. 166, 175, 584 N.E.2d 345, 354 (Ill.App.Ct.1991); *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 203, 443 N.E.2d 978, 988 (Ohio 1983) (noting the danger in applying collateral estoppel in defective design cases, given the technical nature of the questions involved).

The underlying incidents in *Hoch* and the present action are sufficiently distinguishable to foreclose the use of collateral estoppel here. In *Hoch*, the issue of defective seat belt design arose out of a fatal, single-car accident in which the driver was ejected through the sunroof when the vehicle rolled over "two or three times." *Hoch*, 24 Cal. App.4th at 48, 29 Cal.Rptr.2d at 616. In the present action, the plaintiffs claim that the passenger-side seat belt failed when their car sustained a driver's side impact in a collision with another vehicle. Certainly, the differences between the underlying incidents in these two cases underscore the appropriateness of the rule. The conclusion in a prior proceeding that a product failed due to defective design necessarily rests upon a determination that the design was inadequate to withstand the specific, foreseeable circumstances of the underlying incident. It does not automatically follow that the product would fail due to defective design in a differ-ent *type* of incident, where the forces acting upon the product may have been distinct from those in the earlier litigated incident (and possibly unforeseeable). *Cf. Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir.1994) ("That a product failed in a particular accident does not necessarily show 'defect,' however.").

■ However, even assuming *arguendo* that the requisite identity of issues is present, the court nonetheless finds that it would be unfair under the circumstances to permit the use of collateral estoppel here. Subsequent to the entry of judgment in *Hoch*, the National Highway Traffic Safety Administration ("NHTSA") announced that an exhaustive investigation of the phenomenon of "inertial actuation" had found no basis for the allegation that "Type I" seat belt buckles were subject to inadvertent release during real-world vehicle crashes. *See* App. to AlliedSignal's Mem. in Opp'n to Plaintiffs' Mot. for Summ.J., Ex. 5. Confidence in the correctness of the earlier determination is fundamental to the principles of collateral estoppel, based at least in part upon a conviction that, even if the issue were relitigated, the result would not change. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982). Here, confidence in the *Hoch* verdict is undermined by the existence of additional evidence on the phenomenon of inertial actuation—evidence that was unavailable during the *Hoch* trial— which conceivably could lead to a different result. *See id.* § 29 cmt. j; *see also Ezagui v. Dow Chem. Corp.*, 598 F.2d 727, 732 (2d Cir.1979) (finding that new scientific evidence was sufficient ground for withholding collateral estoppel). Thus, because there is a substantial question as to the reliability of the special verdict in *Hoch*, the use of collateral estoppel is inappropriate.[6]

---

5. Of course, the rule that collateral estoppel should not be applied in defective design cases involving distinct underlying incidents necessarily reflects the broader concern that a court, in determining whether collateral estoppel is proper, consider whether the party to be estopped had a full and fair opportunity to litigate the issue in the prior action.

6. Moreover, the plaintiffs in the present action move for summary judgment only as to the first element of their product liability claim—defective design. Even if the doctrine of collateral estoppel were applied, the plaintiffs would still need to prove that the seat belt *actually failed* during the accident, and that such failure enhanced Ms. Rogers's injuries. Thus, in light of the fact that testimony regarding the defect would still be necessary to prove causation, the application of collateral estoppel would not result in significant judicial economy. *See Held v. Mitsubishi Aircraft Int'l, Inc.*, 672 F.Supp. 369,

**1420**

For the foregoing reasons, the court finds that there are genuine issues of material fact regarding the issue of defective design. Accordingly, the plaintiffs' motion for partial summary judgment must be denied.

### B. Defendant AlliedSignal's Motion for Complete Summary Judgment

■ Defendant AlliedSignal has moved for complete summary judgment as to both the plaintiffs' statutory strict liability and common law negligence claims. Specifically, AlliedSignal argues that the plaintiffs have failed to produce any evidence that the vehicle's seat belt had a manufacturing defect (despite allegations to that effect in the complaint) and, indeed, have admitted in their answers to Ford's interrogatories that the defect alleged is one of design rather than manufacture. *See* Plaintiffs' Supp'l Resp. to Ford's First Interrogs., Ex. 3 of AlliedSignal's App. to Mem. in Supp. of Mot. for Summ.J., Interrog. No. 11(c), at 2. Accordingly, the defendant contends that, because it did not design the Lincoln's seat belt assembly but simply manufactured it to the design and performance specifications of defendant Ford, the court should grant complete summary judgment in AlliedSignal's favor.

As AlliedSignal notes, Indiana's Strict Product Liability Act—which governs the plaintiffs' strict liability claim—is ambiguous on the question of whether it imposes liability for design defects upon a component part manufacturer who played no role in the design of the component part. In its relevant pre–1995 Amendment form, the Strict Product Liability Act simply imposes liability on "[o]ne who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous ... if ... the seller is engaged in the business of selling such a product." IND.CODE § 33–1–1.5–3(a) (1988); *see Reed v. Central Soya Co., Inc.,* 621 N.E.2d 1069, 1072 (Ind.

1993). The Act defines a 'seller' as "a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor." *Id.* § 33–1–1.5–2 (1988). Thus, because of the Act's ambiguity on this point, AlliedSignal argues that it did not abrogate the "contractor's defense" available at common law.

■ In interpreting legislative enactments, the court's foremost objective must be to determine and give effect to the intent of the legislature. *See Amoco Prod. Co. v. Laird,* 622 N.E.2d 912, 915 (Ind.1993). Since the Strict Product Liability Act is in derogation of the common law, it must be strictly construed. *State Farm Fire & Casualty Co. v. Structo Div., King Seeley Thermos Co.,* 540 N.E.2d 597, 598 (Ind.1989).[7] It is a fundamental rule of statutory construction that legislatures do not intend to make any changes in the common law beyond what they declare either in express terms or by unmistakable implication. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.,* 578 N.E.2d 669, 673 (Ind.1991); *McGraw–Edison Co. v. Northeastern Rural Elec. Membership Corp.,* 647 N.E.2d 355, 359 (Ind. Ct.App.1995). Indeed, courts construing legislative enactments must presume that the legislature was aware of the common law and did not intend to make changes in it beyond the import of its words. *Hinshaw v. Board of Comm'rs,* 611 N.E.2d 637, 639 (Ind.1993); *McGraw–Edison,* 647 N.E.2d at 359–60.

■ At the time Indiana's Strict Product Liability Act was adopted, the "contractor's defense" available at common law provided that if an independent contractor or builder acted upon plans and specifications furnished by another, the contractor or builder was justified in relying upon those plans and specifications and was not liable to third parties for injuries caused by a design defect unless the plans and specifications were so

389 (D.Minn.1987); *Goodson,* 2 Ohio St.3d at 203, 443 N.E.2d at 987. In sum, little would be gained by preventing defendant AlliedSignal from litigating the alleged defectiveness of the seat belt assembly.

7. In an earlier judicial incantation, this judge believed that the *common law* concepts embodied in Section 402A of the Restatement (Second)

of Torts were *not* subject to strict construction. *See Cornette v. Searjeant Metal Prods., Inc.,* 147 Ind.App. 46, 55, 258 N.E.2d 652, 657 (Ind.App. Ct.1970) (Sharp, J., concurring). This judge adheres to his *Cornette* views and does not conceive that the rule of *statutory* construction here cited is in tension with the concurring opinion there.

obviously defective that no reasonable contractor or builder would follow them. *See J.I. Case Co. v. Sandefur,* 245 Ind. 213, 197 N.E.2d 519 (Ind.1964); *Hobson v. Beck Welding & Mfg., Inc.,* 144 Ind.App. 199, 207–08, 245 N.E.2d 344, 349 (Ind.App.Ct.1969) (Sharp, J., concurring).

Nothing in the express terms of the statute betrays a legislative intent to abrogate the "contractor's defense," nor does it appear that the Indiana General Assembly "by unmistakable implication" intended to abrogate the defense.[8] *But see Shanks v. A.F.E. Indus., Inc.,* 403 N.E.2d 849, 856 (Ind.Ct.App. 1980) ("We believe the proper rule to be that the manufacturer of a component is liable under § 402A [of the Restatement (Second) of Torts] for injuries to an ultimate user or consumer for a defect where the defective component renders the product in which the component is incorporated unreasonably dangerous."), *superseded by Shanks v. A.F.E. Indus., Inc.,* 275 Ind. 241, 416 N.E.2d 833 (Ind.1981). Assuming without deciding that the common law "contractor's defense" retains its vitality under the Strict Product Liability Act, the fact remains, however, that the defense is relevant only if the party invoking the defense can show that it took no part in the design of the allegedly defective product. The court finds in the present cause that there is a mixed question of fact and law as to whether AlliedSignal was an independent contractor or builder within the meaning of the common law "contractor's defense." Moreover, even assuming that AlliedSignal qualifies as an independent contractor or builder under the common law, there would then be a genuine issue of material fact as to whether the plans and specifications provided by defendant Ford were so obviously defective that no reasonable contractor or builder would have followed them. Accordingly, the court finds that AlliedSignal has not demonstrated the absence of a genuine issue of material fact.

AlliedSignal's argument that it is entitled to summary judgment as to the plaintiffs'

common law negligence claim must fail for the same reasons. Although a common law negligence action brought against the manufacturer of a product is not subject to the terms of Indiana's Strict Product Liability Act, *Koske v. Townsend Eng'g Co.,* 551 N.E.2d 437, 443 (Ind.1990), a party seeking summary judgment based upon the common law "contractor's defense" still must demonstrate the absence of a genuine issue of material fact as to its role in the creation of the allegedly defective product. This AlliedSignal has not done.

For the foregoing reasons, the court finds that there are genuine issues of material fact regarding AlliedSignal's role in the design of the seat belt assembly. Accordingly, AlliedSignal's motion for complete summary judgment as to the plaintiffs' statutory strict liability and common law negligence claims must be denied.

### C. *Defendants' Motion for Partial Summary Judgment with Respect to Punitive Damages*

Defendant Ford Motor Company moved for partial summary judgment as to the plaintiffs' claim for punitive damages on April 1, 1996, and the court granted defendant AlliedSignal's request to join in Ford's motion on April 11, 1996. Plaintiffs Gail and Robert Rogers filed no response to the defendants' motion for partial summary judgment within the time allowed by Local Rule 7.1(a), nor did they move for additional time within which to file such a response.

Punitive damages are not awarded as a matter of course under Indiana law. *Reed,* 621 N.E.2d at 1076; *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349, 362 (Ind.1982). Such damages are not compensatory in nature but rather are designed to punish and deter wrongdoers from such conduct in the future. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 983 (Ind.1993); *Carroll v. Statesman Ins. Co.,* 509 N.E.2d 825, 827 (Ind.1987).

---

**8.** Although the defendant argues that the 1995 Amendment to Indiana's Strict Product Liability Act creates doubt as to whether the earlier version applies to component manufacturers at all, the fact that the revised language is more specific with regard to the definition of "manufacturer" does not necessarily indicate that the prior meaning of the statute has been changed. Indeed, the revised language may amount to nothing more than a clarification of the previous language.

Theoretically, punitive damages may be awarded in a tort action if the plaintiff establishes a right to compensatory damages, *Sullivan*, 605 N.E.2d at 140, and proves by clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing." *Budget Car Sales v. Stott*, 662 N.E.2d 638 (Ind.1996), *denying trans. to Budget Car Sales v. Stott*, 656 N.E.2d 261 (Ind.Ct.App.1995); *Erie Ins. Co. v. Hickman*, 605 N.E.2d 161, 162 (Ind.1992); *Bud Wolf Chevrolet v. Robertson*, 519 N.E.2d 135, 137 (Ind.1988); *see* IND.CODE § 34–4–34–2 (1993). Because Indiana law no longer cloaks defendants with a presumption of nonculpability, plaintiffs need not produce evidence which excludes every reasonable hypothesis of innocent conduct. *Erie*, 605 N.E.2d at 162; *Bud Wolf*, 519 N.E.2d at 137.

■ Although plaintiffs seeking punitive damages under Indiana law are no longer required to present additional evidence to rebut a hypothesis of innocent conduct, nothing in *Erie* relieves the plaintiffs of their burden of establishing a question of material fact on an issue of which they bear the burden of proof at trial. A district court presented with a motion for partial summary judgment has one task and one task alone: to decide, based upon the evidence of record, whether there is a genuine dispute of material fact that requires the issue to go to trial. *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir.1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *see Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. The court does not bear the burden of identifying the evidence that will facilitate its assessment of the summary judgment motion. *Waldridge*, 24 F.3d at 920. As Rule 56 of the Federal Rules of Civil Procedure makes clear, the parties have an absolute obligation to provide the court with the evidence they wish to be considered.

■ Here, the plaintiffs' unqualified failure to respond to the motion for summary judgment is fatal to their claim for punitive damages. Federal Rule Rule 56 states that "[i]f the adverse party does not so respond, summary judgment, if appropriate, *shall* be entered against the adverse party." FED. R.CIV.P. 56(e) (emphasis supplied). This requirement is not a technicality: If the nonmoving party fails to come forward with evidence that would reasonably permit the finder of fact to find in its favor, the district court *must* enter summary judgment against that party. *McGrath*, 44 F.3d at 569; *Cliff v. Board of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir.1994); *Waldridge*, 24 F.3d at 920; *see Matsushita*, 475 U.S. at 585–87; 106 S.Ct. at 1355–56; *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 249–52, 106 S.Ct. at 2511–12.

This court's local rules reflect an attempt to make the non-movant's summary judgment obligations explicit. Local Rule 56.1 provides in relevant part:

> ... Any party opposing the [summary judgment] motion shall ... serve and file any affidavits or other documentary material controverting the movant's position, together with an answer brief that shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D.IND.R. 56.1. The United States Court of Appeals for the Seventh Circuit has approved the strict enforcement of rules such as the above. In *Waldridge*, the court of appeals noted: "We have also repeatedly upheld the strict application of these [local] rules, sustaining the entry of summary judgment when

the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge,* 24 F.3d at 922; *see Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995); *A.V. Consultants, Inc. v. Barnes,* 978 F.2d 996, 1002 (7th Cir.1992) (upholding enforcement of this court's local rule); *Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 567–68 (7th Cir. 1992); *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir.1990).

The rule leaves no room for doubt as to the consequences of failing to submit an appropriate factual statement in opposition to a motion for summary judgment: "[T]he court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy...." N.D.IND.R. 56.1. The defendants, as the moving parties, contend that because Ford has come forward with evidence of reasonable care in the design and manufacture of the safety restraint systems in the Rogers's 1988 Lincoln Town Car, the court should grant partial summary judgment in their favor. Specifically, the affidavit of Ford design analysis engineer Elbert Parkes provides sworn testimony that Ford, in designing and manufacturing the Lincoln's seat belt assemblies, complied with Federal Motor Vehicle Safety Standards Nos. 208, 209, and 210, all of which apply to the design and manufacture of passenger restraint systems and are set forth at 49 C.F.R. §§ 571.208–.210. The defendants maintain that the record contains no evidence that would show, by clear and convincing evidence, that Ford engaged in conscious and intentional misconduct it knew was likely to result in injury to the plaintiffs. Accordingly, the defendants contend that there is no genuine issue of material fact as to punitive damages and that they are entitled to judgment as a matter of law.

The decision whether to apply local rules strictly or to overlook such transgressions is a matter left to the discretion of the court. *Waldridge,* 24 F.3d at 923. Moreover, there is nothing improper in this court choosing to enforce its own local rules strictly, "even if the parties themselves have not raised the

matter." *Id.* at 924. As the Seventh Circuit noted in *Waldridge,*

> The factual statement required by [S.D.Ind.] Rule 56.1 is not a mere formality. It follows from the obligation imposed by Fed.R.Civ.P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.... [The appellant's] failure to comply with the local rule was, accordingly, not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal.

*Id.* Here, the plaintiffs present nothing more than a bald assertion in their complaint that "[the] Defendants' wrongdoing constituted more than mere negligence or human error, and exhibited elements of gross negligence, willful and wanton misconduct, and recklessness warranting the imposition of punitive damages against the Defendants." There is no statement of the contested issues in response to the defendants' motion for summary judgment, nor is there any attempt to controvert the factual averments set forth in the defendants' statements, to set forth the plaintiffs' independent factual representations, or to point this court to evidence in the record that supports the plaintiffs' position on the issue of punitive damages. The plaintiffs' unsupported allegation that punitive damages are warranted will not suffice, either under Federal Rule 56 or under this court's Local Rule 56.1.

For the foregoing reasons, the court finds that there are no genuine issues of material fact regarding the issue of punitive damages. Accordingly, the defendants' motion for partial summary judgment as to the plaintiffs' claim for punitive damages must be granted.

## CONCLUSION

For the reasons described above, the court **DENIES** the plaintiffs' motion for partial summary judgment as to the issue of defective design, **DENIES** defendants Allied-Signal and Bendix's motion for complete summary judgment, and **GRANTS** the defendants' motion for partial summary judg-

ment as to the issue of punitive damages. **IT IS SO ORDERED.**